OPINION OF THE COURT
Michael A. Ciaffa, J.
Internet-related business transactions form a major part of our nation’s economy. According to U.S. Census Bureau statistics, http://www.census.gov/estats, “e-commerce” sales by “merchant wholesalers” in 2009 amounted to more than $1.2 trillion ($1,211,000,000,000).
Through the use of e-mails and Web sites, many formerly small local businesses now sell their goods worldwide. Thanks to the growth of sales over the World Wide Web, local merchants often have the opportunity to obtain wholesale merchandise at even greater discounts today, from businesses throughout the world.
When e-commerce transactions go smoothly, both parties benefit. But when disputes arise, the parties typically seek a judicial resolution.
Plaintiffs bringing such cases against e-commerce merchants typically want their claims heard in a local court. Defendants, in turn, typically want to litigate all matters in a single chosen forum. This case fits the same pattern. Plaintiff, Guillermo *163 Jerez, a Nassau County resident, brought suit in Nassau County District Court against two Florida corporations, JD Closeouts, LLC and JD Closeouts.com, Inc., seeking a refund of monies paid ($7,146) for the purchase and shipping of certain “closeout” merchandise (thousands of pairs of tube socks). Through e-mails and advertisements on their Web site, http://jdcloseouts.com, defendants sell such “closeout” merchandise all across the United States.
Defendants contend that this lawsuit should have been brought in Florida, not New York. In so arguing, they seek dismissal of the action on the ground that “a valid and enforceable forum selection clause requires jurisdiction of any disputes in Broward County, Florida.”
As demonstrated below, forum selection clauses are presumptively enforceable. They provide a predictable and important means for the orderly and consistent adjudication of disputes between merchants and their customers. However, before a forum selection clause can be deemed binding, it must somehow be incorporated into a contract or agreement between the parties.
When e-commerce transactions are involved, the same general rules apply, with a twist. Under an evolving and still-developing body of federal and state law, an e-commerce merchant can condition its sales upon a mandatory forum selection provision through various means, including an exchange of e-mails, a click-through agreement, or other circumstances allowing for the “incorporation by reference” of conspicuous “terms of sale.” But if the “terms of sale” are simply buried or “submerged” in multiple layers of Web site pages, and such terms are not specifically brought to the buyer’s attention, the “forum selection” clause will not be deemed part of the parties’ agreement. As a consequence, as long as the forum selected by the buyer is a proper one under established rules of “long-arm jurisdiction,” the action will not be dismissed simply because the “terms of sale” listed on the seller’s Web site purportedly limit the buyer’s remedies to a lawsuit in a different forum.
Facts
Defendants sell “closeout” merchandise over the Internet. This action allegedly “arises from a sale of goods between the parties over the internet” (see affirmation of Meyer Y. Silber in support of defendants’ motion ¶ 3). According to plaintiff’s complaint, he received an e-mail solicitation from defendants in *164 August 2010, offering for sale 50,000 pairs of white tube socks (complaint ¶ 14). Defendants’ Web site represented that its closeout merchandise “should all be first quality . . . excess inventory” from “[n]ame-brand companies” (complaint ¶ 16). Based upon that Web site representation, plaintiff alleges that it agreed to purchase 50,000 pairs of tube socks from defendants for an agreed price of $6,000, plus $1,146 in shipping costs (complaint ¶¶ 17, 19).
Upon inspection of the tube socks following delivery, plaintiff asserts that it determined that the socks “were defective,” were not “first quality,” and “in fact are useless and unsellable” (complaint ¶¶ 20, 23). In addition, plaintiff alleges that only 34,800 pairs, rather than 50,000 pairs, were delivered (complaint 1121).
Plaintiff “repeatedly” demanded return of the money paid for the socks, together with shipping costs (complaint ¶ 22). Defendants allegedly “refused to refund the payments or accept the return of the defective merchandise” (complaint ¶ 22).
Plaintiffs complaint asserts a facially sufficient factual basis for long-arm jurisdiction over defendants (see CPLR 302 [a]), through allegations (complaint ¶¶ 5-8) that JD Closeouts (i) regularly solicits and transacts business with customers in the State of New York, (ii) regularly ships merchandise from other states into the State of New York, and (iii) earns significant income from selling goods to residents of the State of New York. Defendants do not contest any of these allegations. Nor do they contest jurisdiction of the District Court under the more limited long-arm rules of UDCA 404 (a).
Through a timely motion to dismiss, made pursuant to CPLR 3211 (a), defendants seek dismissal of plaintiff’s entire case, principally on the ground that “a valid and enforceable forum selection clause requires jurisdiction of any disputes in Broward County, Florida.” In support of the motion, defendants submit an affidavit from their principal owner, Joseph Beyhan. He asserts:
“The sale of all goods transacted on the JD Closeouts website is conditioned by the ‘Terms of Sale.’
“The website contains the ‘Terms of Sale’ on its ‘About Us’ page.
“The ‘Terms of Sale’ has a hyperlink that directs the viewer to the terms of all sales, including disclosures, return policy and legal policy.
“That page titled ‘Sale Terms’ states that ‘[i]n the *165 event that an irresolvable situation arises, any litigation will take place in Broward County, in the State of Florida.’
“JD Closeout’s legal policy is clear and unambiguous and available to anyone who views its website.
“The forum selection clause is extremely important for JD Closeouts, so that it is not made subject to lawsuits in every potential jurisdiction in the United States.”
Plaintiff opposes the motion, contending that the “forum selection” provision found on defendants’ Web site “is not part of the contract between the parties.” Plaintiff thus asserts that he has “never seen this language before, and . . . never saw it” when he agreed to purchase tube socks from defendants. As his attorney further maintains, the language invoked by defendants is not a true “forum selection clause.” “[I]t is simply language buried in the defendant’s website that is very difficult to find.”
Defendants’ reply includes a second affidavit from Joseph Beyhan. In his view, it would be “unconscionable” to make JD Closeouts subject to jurisdiction in “every state in every county in the country.” The forum selection provision on the Web site “is an absolute necessity” to defendants’ business. Since JD Closeouts “is not a huge company,” it cannot afford to have its officers “spend time away” defending lawsuits outside of Bro-ward County, Florida. As a “discount wholesaler,” it depends upon the forum selection provision to ensure that legal disputes “are fought locally, which in turn keeps costs low.”
Discussion
The court’s analysis starts with the premise that forum selection clauses are “prima facie valid.” (See Carnival Cruise Lines, Inc. v Shute, 499 US 585, 589 [1991], quoting The Bremen v Zapata Off-Shore Co., 407 US 1, 10 [1972].) While forum selection clauses are “subject to judicial scrutiny for fundamental fairness” (Carnival Cruise Lines, 499 US at 595), “form contracts” containing such clauses are presumptively enforceable regardless of whether the terms are “subject to negotiation.” (499 US at 590-594.)
Businesses often have legitimate business reasons for including a forum selection clause in a form contract. In the case at bar, the reasons expressed by defendants’ owner, Mr. Beyhan, fall squarely within the rationale that the Supreme Court approved in Carnival Cruise Lines. (499 US at 593-594.)
*166 The Carnival Cruise Lines case involved a forum selection clause in a cruise passenger’s ticket. The face of the ticket contained an admonition that the cruise was “subject to conditions of contract . . . please read contract,” and it included another page listing, among the terms, a forum selection clause. (499 US at 587.) In upholding the enforceability of the clause, the U.S. Supreme Court rejected a claim that such a clause “is never enforceable simply because it is not the subject of bargaining.” (499 US at 593.) The rationale applied by the Court applies equally to the defendants.
Like Carnival Cruise Lines, defendants have a “special interest” in limiting the fora in which they potentially could be subject to suit. Since they do business in “many locales” throughout the United States, it is “not unlikely” that they could be subject to litigation in many different states. (Id.) A clause establishing the forum for such suits, in advance, would have a “salutary effect of dispelling any confusion about where suits . . . must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions.” (Id. at 593-594.) Finally, defendants’ customers stand to benefit from the reduced costs and savings that defendants would enjoy by limiting the fora in which it may be sued. (Id.)
In applying the logic of Carnival Cruise Lines, this court necessarily assumes that the Supreme Court’s logic applies with even greater force to e-commerce transactions. Indeed, considering the extent to which World Wide Web sellers do business throughout the world today, the need for a forum selection clause for such transactions seems especially compelling.
Nevertheless, Carnival Cruise Lines involved a fact pattern where the passengers “conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity.” (499 US at 595.) Plaintiff, in this case, avers that he never saw the provision before, and defendants present no evidence that the “terms of sale” listed on their Web site were ever communicated to plaintiff in connection with the transaction. Under the law of contract, the absence of such a communication is critically important in determining whether the forum selection clause will be enforced. (See Effron v Sun Line Cruises, Inc., 67 F3d 7, 9 [2d Cir 1995] [“The legal effect of a forum-selection clause depends in the first instance upon whether its existence was *167 reasonably communicated to the plaintiff’]; accord Phillips v Audio Active Ltd., 494 F3d 378, 383 [2d Cir 2007]; D.H. Blair & Co., Inc. v Gottdiener, 462 F3d 95, 103 [2d Cir 2006].)
Judge Sotomayor’s well-reasoned opinion in Specht v Netscape Communications Corp. (306 F3d 17 [2d Cir 2002]) provides a useful framework for further analysis of the issue. In Specht, the court applied precedents “from the world of paper contracting” to “the emergent world of online product delivery.” (306 F3d at 31.) The plaintiffs in that case were Internet users who had downloaded software from defendants’ web page. After they sued defendants in a class action raising various claims, defendants sought to compel arbitration of the dispute, based upon terms listed on their Web site.
In order to resolve “the central question of arbitrability,” the court found it necessary to first address “issues of contract formation in cyberspace.” (306 F3d at 20.) Although cyberspace transactions typically lacked “a physical document containing contract terms,” the parties to such a transaction could be deemed to have been put on “inquiry notice” of license terms that a reasonably prudent person would have seen on the Web site. (306 F3d at 31.) Conversely, if an offer on a Web site “did not carry an immediately visible notice of the existence of license terms or require unambiguous manifestation of assent to those terms,” the mere “existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms.” (306 F3d at 31-32.)
The court in Specht went on to find that the placement of license terms on an “unexplored portion of [defendants’] web-page” below the “download button” was not sufficient to bind customers to those terms. (306 F3d at 32.) In so holding, the court distinguished other “online transaction” cases where “there was much clearer notice than in the present case that a user’s act would manifest assent to contract terms.” (306 F3d at 33.) As an example of the latter line of decisions, the court cited Caspi v Microsoft Network, L.L.C. (323 NJ Super 118, 732 A2d 528 [1999]), where a New Jersey appellate court upheld a forum selection clause “where subscribers to online software were required to review license terms in scrollable window and to click T agree’ or T don’t agree.’ ” (306 F3d at 33.)
A more recent New Jersey case, Hoffman v Supplements Togo Mgt., LLC (419 NJ Super 596, 18 A3d 210 [Super Ct 2011], cert granted 209 NJ 231, 36 A3d 1063 [2012]), expands upon the distinction drawn in Specht between Internet transactions *168 which permissibly incorporate an arbitration or forum selection clause, and those which do not. The plaintiff in Hoffman was an attorney who purchased a dietary supplement known as “Erection MD” from defendants’ Web site. Defendants moved to dismiss plaintiffs consumer fraud lawsuit on the ground that their Web site included the following language: “By placing your order . . . you are agreeing that any and all litigation will take place in the state of Nevada.” (419 NJ Super at 600-601, 18 A3d at 213.)
The Appellate Division of the Superior Court, reversing the trial court, concluded that the forum selection clause “is presumptively unenforceable.” (419 NJ Super at 612, 18 A3d at 220.) It did so because defendants’ Web site “was evidently structured in an unfair manner so that the clause would not appear on a purchaser’s computer unless he or she scrolled down to display the ‘submerged’ clause before adding the product to his or her electronic ‘shopping cart.’ ” (419 NJ Super at 598, 18 A3d at 212.) “[T]he forum selection clause was unreasonably masked from the view of the prospective purchasers because of its circuitous mode of presentation ... As we noted in Caspi, supra, ... a forum selection clause cannot be ‘proffered unfairly, or with a design to conceal or de-emphasize its provisions.’ ” (419 NJ Super at 611, 18 A3d at 219.)
Finally, the court added: “We need not reach plaintiffs- argument that defendants were required, as a matter of law, to include a specific feature near the [forum selection language] asking purchasers to ‘click’ or otherwise manifest their assent to its terms.” (419 NJ Super at 612, 18 A3d at 220.) After noting the existence of a case law division on the issue, the court simply held, on “more fundamental grounds,” that the provision was presumptively unenforceable due to “the manifestly unfair manner in which defendants’ website was structured.” (Id.)
In contrast to the rulings made in Specht and Hoffman, other recent court rulings have enforced a Web site-based forum selection provision where its existence was “reasonably communicated” to the customer. For instance, in one New York County case involving very different facts than those presented here, the Supreme Court held that a forum selection provision on a Web site was enforceable where the existence of the seller’s “terms and conditions” was disclosed in a letter agreement confirming the transaction. (Madison Indus., Inc. v Garden Ridge Co., 2011 NY Slip Op 31866[U] [Sup Ct, NY County *169 2011].) Because the letter agreement explicitly informed plaintiff that defendant’s “terms and conditions” were posted on its Web site, the court rejected plaintiffs argument that the terms were not binding. Since the terms were “incorporated by reference” into the letter agreement, plaintiff was bound by the terms irrespective of whether plaintiff had actually reviewed them (2011 NY Slip Op 31866[U], *5). Failure to read the terms in such circumstances “is not an excuse.” (Id.) Plaintiff’s “ignorance of the terms and conditions, including the forum selection clause, was the result of its own negligence.” (2011 NY Slip Op 31866[U], *6.) Accordingly, the court concluded that the provision “is prima facie valid.” (2011 NY Slip Op 31866[U], *7.)
Similarly, in Fteja v Facebook (— F Supp 2d —, 2012 WL 183896, *5 [SD NY 2012]), the court enforced a forum selection provision where the “sign-up” page for a Facebook account provided: “By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service.” Through a hyperlink, clicking on “Terms of Service” sends users to a different page, which includes a forum selection clause requiring the resolution of “any claim” in Santa Clara County, California (id.). Although the Web site did not contain any mechanism forcing the user to actually examine the terms before assenting, the critical inquiry was whether the terms had been “reasonably communicated” to the user. In concluding that the “terms of service” had been reasonably communicated, the court held that “clicking the hyperlinked phrase is the twenty-first century equivalent of turning over the [Carnival Cruise Lines] cruise ticket” (2012 WL 183896, *10). The basic principles of contract law remained the same. By clicking the “Sign-Up” button, plaintiff assented to the “terms of use” that were reasonably communicated to him. Therefore, under contract law principles, plaintiff assented to the forum selection clause on the Web site.
The facts in this case more closely approach the circumstances presented in Hoffman and Specht, where “submerged” Web site provisions were found insufficient to bind the company’s customers. Unlike the circumstances presented in the other cases discussed above, the existence of a forum selection clause was not reasonably communicated to plaintiff through a printed contract (Carnival Cruise Lines), a confirming letter agreement incorporating the provisions by reference (Madison Indus.), or a required “click-through” acceptance of hyperlinked terms and conditions (Fteja and Caspi). Rather, the terms were “buried” *170 and “submerged” on a Web page that could only be found by clicking on an inconspicuous link on the company’s “About Us” page.
Without minimizing the importance of the provision to defendants’ business, too little was done to ensure that the provision became part of the parties’ contract. Especially in cases where the terms of an e-commerce transaction are negotiated, in the first instance, by e-mail, a seller must make an affirmative effort to “reasonably communicate” the essential terms of sale to the buyer. If it wishes to make those terms part of the bargain, it can easily do so by providing notice to the buyer that the terms can be found at a given Web site address. Defendants did not do so. Nor did they structure their Web site in a manner that placed the terms of sale directly up front, in a conspicuous place, for all to see.
Assuming, without deciding, that the conspicuous placement of such terms of sale on the Web site of an Internet merchant would be sufficient even in cases where the transaction arose from an e-mail solicitation, defendants’ “terms of sale” were “submerged” too deeply to become a binding part of any sale agreement. As Specht and Hoffman teach, “submerged” forum selection clauses will not be enforced under basic contract law principles.
In closing, this court reiterates that forum selection clauses are prima facie valid when a party can show that the clause was incorporated into the parties’ contract. However, e-commerce merchants cannot blithely assume that the inclusion of sale terms, listed somewhere on a hyperlinked page on their Web site, will be deemed part of any contract of sale. In order for defendants to obtain dismissal of this action on the theory that the instant dispute is subject to a binding forum selection clause, defendants had to prove that the clause is properly part of the parties’ contract. Defendants’ moving papers fail to meet that burden. Accordingly, defendants’ motion to dismiss the action, pursuant to CPLR 3211 (a) (1) and or (7), based upon the forum selection language on their Web site, must be denied.
Finally, defendants’ additional request for dismissal, pursuant to CPLR 3211 (a) (8), on grounds of improper service, is denied as to both JD Closeouts, LLC, and JD Closeouts.com, Inc., due to defendants’ failure to raise such a challenge in their main moving papers. Although irregularities in service upon these entities may have occurred, any such defects were waived when defendants’ main moving papers challenged only the sufficiency *171 of Service upon defendant Beyhan. To the extent defendant Beyhan timely and properly challenged plaintiffs proof of service through his motion for dismissal under CPLR 3211 (a) (8), his motion also is denied. Beyhan’s conclusory claim that he was served only by mail is insufficient to rebut the affidavit of service. However, Beyhan’s challenge to the claim against him, personally, has merit. Although allegations of fraud can sometimes support a piercing of the corporate veil, the claim against defendant Beyhan, individually, fails to set forth a particularly pleaded cause of action against him for fraud. (See CPLR 3016 [b].) Accordingly, the claim against defendant Beyhan, individually, is dismissed. The action shall proceed, on the merits, as against the remaining defendants.