OPINION OF THE COURT
Michael A. Ciaffa, J.
*197 Decision after Trial
This action involves a claim for monies owed under a 1995 motor vehicle lease between a Greenwich, Connecticut leasing company (plaintiff Putnam Leasing) and an individual who was then residing in Greenwich, Connecticut (defendant Pappas).
The lease, on its face, provided that it “shall be deemed executed at lessor’s place of business” in Greenwich, Connecticut, and it contained a representation by defendant that the vehicle would be “principally operated and garaged in the State of Connecticut.” For reasons not explained, the lease contained a forum selection clause providing for litigation only in courts situated within the State of New York. The lease further specified that it was to be interpreted in accordance with the laws of the State of New York.
Consistent with these provisions, plaintiff commenced an action against defendant in Nassau County District Court in January 1999. It obtained a default judgment against her in March 1999 after she failed to answer the complaint.
Fourteen years later, in March 2013, defendant received notice that a bank account in Boston, Massachusetts was being restrained. Following unsuccessful proceedings in Massachusetts, defendant moved in this court for an order vacating the default judgment.
Defendant’s motion contended that the judgment was void for lack of jurisdiction (CPLR 5015 [a] [4]). Her moving papers further alleged that the parties had “no contacts” with New York that might justify entry of a judgment in this court.
Defendant also challenged the sufficiency of plaintiffs proof of service of process upon her. According to the affidavit of service that was used to obtain the default judgment, plaintiff’s service of process was made “in the manner AGREED UPON BY THE PARTIES,” namely by “certified mail, return receipt requested” addressed to defendant at the Greenwich, Connecticut address set forth in the lease.
Defendant no longer lived at that Connecticut address when service was attempted in January 1999. Following her return of the leased vehicle to plaintiff in November 1998, plaintiff sent a letter to her at her new residence address in Boston, Massachusetts, by certified and regular mail, claiming she still owed money for a “shortfall” under the lease.
But plaintiff made no effort to serve her at the new residence address when it commenced its action against her. Nor did it at *198 tempt to serve her at a known South Boston business address where she worked.
Instead, in accordance with the literal terms of the lease, plaintiff attempted service upon defendant by sending a certified mailing to defendant’s former residence address in Connecticut, followed by a second regular mailing to the same address. Not surprisingly, the certified mailing was returned to plaintiff, unclaimed.
Upon due consideration of these facts, the court issued a decision on December 20, 2013 which rejected defendant’s jurisdictional objection, but vacated the default judgment on due process grounds. It explained:
“[B]ased upon defendant’s proof that plaintiff was well aware of defendant’s new residence address and her business address when it attempted service of process upon her by certified mail directed to her former residence, due process required further efforts to give notice to defendant once the certified mail came back, unclaimed. Since the judgment in this case is tainted by a lack of due process, fundamental fairness allows this Court to take appropriate action allowing defendant to defend against plaintiffs complaint on the merits.”
Following joinder of issue, trial of plaintiff’s claim on the merits was thereafter conducted on July 28, 2014. According to testimony provided by plaintiffs vice-president, Steven Posner, defendant leased a 1995 Range Rover from plaintiff in January 1995, pursuant to the terms of a written four-year “open-ended” vehicle lease. Defendant made all required monthly lease payments over the next four years, but she remained responsible at lease end for the difference between the vehicle’s agreed purchase-option price ($23,000) and the net proceeds received from the vehicle’s re-lease in January 1999 ($17,060), together with a small vehicle disposition fee ($100).
Upon submission of documentary proof of these facts, plaintiff’s trial evidence thereby establishes, prima facie, defendant’s remaining obligation for lease-end payments totaling $6,040. No contrary evidence was submitted by defendant. Instead, defendant’s posttrial memorandum principally addresses, once again, the jurisdictional objections raised in defendant’s motion to vacate the default judgment.
To the extent this court’s December 20, 2013 decision addressed the merits of defendant’s jurisdictional objections, it *199 remains law of the case. However, defendant’s posttrial memorandum also squarely presents a fundamental due process-based jurisdictional claim, predicated upon the United States Supreme Court’s recent decision in Daimler AG v Bauman (571 US —, 134 S Ct 746 [Jan. 14, 2014]). The claim cannot be dismissed out of hand.
Since Daimler was handed down several weeks after this court issued its earlier decision, it merits discussion at this time. In a recent scholarly article published in the New York Law Journal, the authors predict that Daimler “is likely to narrow the reach of New York’s general jurisdiction statute and to alter significantly the settled approach taken to assessing jurisdiction under that statute.” (Edward M. Spiro and Judith L. Mogel, Shrinking Grounds for General Jurisdiction After ‘Daimler’, NYLJ, Aug. 26, 2014.) Broadly viewed, Daimler “call[s] into question whether certain long-held assumptions about the reach of CPLR 301—New York’s general jurisdiction statute—are consistent with due process.” (Id.) Most notably, several post-Daimler decisions by federal court judges have questioned whether “doing business” in New York by itself remains a sufficient constitutional basis for asserting “general jurisdiction” over a defendant. (Id., citing cases.)
If “doing business” in New York, by itself, is insufficient to subject a defendant to general jurisdiction under CPLR 301, what basis does this court have for asserting jurisdiction over this defendant, in the absence of proof of any other “minimum contacts” between defendant and New York? Notably, no claim is made that the instant lawsuit falls within the more limited reach of our state’s long-arm statutes. (See CPLR 302 [a]; UDCA 404 [a].) Accordingly, in order for this court to have personal jurisdiction over defendant, jurisdiction must rest upon facts and circumstances which are consistent with constitutional due process limitations, as announced in Daimler and other cases.
Upon further analysis, however, this court sees nothing in Daimler which questions the general validity of contractual forum selection provisions, such as the one involved in this case. To the contrary, a long line of cases treat contractual forum selection provisions as a permissible substitute for minimum contacts. (See Burger King Corp. v Rudzewicz, 471 US 462, 472 n 14 [1985], citing inter alia Insurance Corp. of Ireland v Compagnie des Bauxites de Guinee, 456 US 694, 703 [1982], and National Equipment Rental, Ltd. v Szukhent, 375 US 311 [1964]; cf. Smith Barney Shearson v Yianilos, 220 AD2d 310, 310-311 *200 [1st Dept 1995] [absent a showing that respondents “consented to the jurisdiction of New York courts . . . the minimal contacts . . . necessary to sustain jurisdiction here are clearly lacking”].)
Such advance agreements respecting jurisdiction are most frequently made in commercial contexts, and they do “not offend due process” unless applied in an “unreasonable and unjust” manner. (Burger King Corp. v Rudzewicz, 471 US at 472 n 14.) Absent proof of “fraud, undue influence, or overweening bargaining power,” a forum selection clause ordinarily “should be given full effect.” (See The Bremen v Zapata OffShore Co., 407 US 1, 12-13 [1972].) While forum selection clauses remain “subject to judicial scrutiny for fundamental fairness” (see Carnival Cruise Lines, Inc. v Shute, 499 US 585, 595 [1991]), “form contracts” containing such clauses are presumptively valid and this holds true regardless of whether the terms are “subject to negotiation.” (Id. at 593; accord Jerez v JD Closeouts, LLC, 36 Misc 3d 161, 165 [Nassau Dist Ct 2012].)
For these reasons, the court rejects defendant’s contention that the absence of a New York “nexus” precludes it from exercising jurisdiction consistent with due process. Since Daimler's due process analysis does not alter or limit prior decisions upholding forum selection clauses, the court reaffirms that it possessed jurisdiction over the instant case, consistent with due process, pursuant to the forum selection clause of the lease.
However, that conclusion does not mean that the absence of a New York “nexus” is entirely irrelevant. To the contrary, it presents a sound basis, under New York conflict of laws principles, for determining whether New York law or Connecticut law should be applied to the substantive issues in this case. As discussed more fully below, Connecticut law governing prejudgment interest upon contract claims grants a trial court considerable discretion, allowing a court to limit prejudgment interest in appropriate cases. Because of the passage of more than 15 years from the date the subject claim became ripe, the issue has significant financial implications to the parties.
Plaintiff’s posttrial memorandum urges the court to award prejudgment interest on its claim pursuant to CPLR 5001 (a) and (b), dating back to “the earliest ascertainable date the cause of action existed.” Case law interpretations of these provisions make plain that a prevailing plaintiff in a contract case is ordinarily entitled to statutory interest, as a matter of course, “from the date the debt becomes due.” (See Rachlin & Co. v *201 Tra-Mar, Inc., 33 AD2d 370, 373 [1st Dept 1970].) Furthermore, as this court has previously noted, under CPLR 5001
“a court is powerless to deny statutory interest to a party seeking breach of contract damages upon a claim at law. In contrast to actions ‘of an equitable nature’ which are subject to ‘the court’s discretion’ (CPLR 5001[a]), the same section states that interest ‘shall be recovered upon a sum awarded because of a breach of performance of a contract’ (id.).” (North Queens Med. P.C. v State Farm Mut. Auto. Ins. Co., 40 Misc 3d 1241[A], 2013 NY Slip Op 51519CU], *4 [Nassau Dist Ct 2013].)
Plaintiff accordingly maintains that prejudgment interest should be awarded under CPLR 5001 from the date defendant’s remaining indebtedness under the open-ended lease matured and became due and payable (Jan. 10, 1999). It therefore requests statutory 9% interest from that date, going forward, to the date of entry of judgment.
Plaintiffs argument hinges on its assumption that New York law applies to the claim made in this case. The issue requires close examination of conflict of laws principles.
As a starting point for analysis, the court looks to the terms of the parties’ lease. It states, unambiguously, that the lease “shall be interpreted in accordance with the laws of the State of New York.”
However, the lease also provides that it “shall be deemed executed at lessor’s place of business” in Greenwich, Connecticut. When combined with defendant’s representation that the leased vehicle would be “principally operated and garaged in the state of Connecticut,” it is apparent that Connecticut has “the most significant relationship to the transaction and the parties.” (See IRB-Brasil Resseguros, S.A. v Inepar Invs., S.A., 20 NY3d 310, 314 [2012], quoting Zurich Ins. Co. v Shearson Lehman Hutton, 84 NY2d 309, 317 [1994], quoting Restatement [Second] of Conflict of Laws § 188 [1].) Therefore, under a traditional conflict of laws analysis, were it not for the “choice-of-law” clause, a New York court would necessarily look to Connecticut law in adjudicating an auto lease dispute like this one.
Moreover, even in cases involving an explicit choice-of-law clause, under New York case law a choice-of-law provision “will not be honored” where the chosen jurisdiction “has no reasonable relation to the agreement.” (Culbert v Rols Capital Co., 184 AD2d 612, 613 [2d Dept 1992]; cf. Welshach Elec. Corp. v *202 MasTec N. Am., Inc., 7 NY3d 624, 629 [2006] [“Generally, courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction”].) The Restatement (Second) of Conflict of Laws § 187 (2) (a) sets forth a similar general rule (“[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . . the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties’ choice”). Stated another way,
“[a] contractual provision that the law of a particular state will govern all disputes between the parties will not be enforced or honored where the law chosen has no reasonable relationship or sufficient contacts with the transaction or subject matter of the contract, where the most significant contacts or substantial relationship with the matter in dispute are in another state.” (19A NY Jur 2d, Conflict of Laws § 34.)
Applying this principle, the absence of any apparent New York nexus or connection to the lease transaction weighs heavily against applying New York law to the parties’ dispute. As far as the court can tell, apart from the forum selection provision, New York State had no connection whatsoever to the transaction or the parties at any time prior to the date this action was commenced in 1999. Accordingly, under well-settled conflict of laws principles, the choice-of-law clause of the lease “will not be enforced or honored” by this court. Instead, based upon Connecticut’s predominate contacts with the parties and the transaction, the court concludes that Connecticut law properly governs the parties’ substantive rights and contractual liabilities.
In so concluding, the court notes that our state legislature has enacted a limited statutory exception for certain “significant” commercial transactions which otherwise lack a sufficient New York nexus. Since 1984, General Obligations Law § 5-1401 has “allow[ed] parties without New York contacts to choose New York law to govern their contracts” if the transaction “in the aggregate” involves “not less than two hundred fifty thousand dollars.” (See IRB-Brasil Resseguros, S.A. v Inepar Invs., S.A., 20 NY3d at 314, quoting General Obligations Law § 5-1401 [1].) Our state legislature passed the statute because New York courts would not otherwise “recognize a ‘choice of New York law ... on the ground that the particular contract *203 had insufficient “contact” or “relationship” with New York.’ ” (IRB-Brasil Resseguros, S.A. v Inepar Invs., S.A., 20 NY3d at 314, quoting Sponsor’s Mem, Bill Jacket, L 1984, ch 421 at 8.) “Instead of applying New York law, the courts would conduct a [traditional] conflicts analysis” and apply another state’s laws (id.). Consequently, in order to eliminate “uncertainty” in cases involving “significant commercial, mercantile or financial contracts,” the legislature enacted a special rule ensuring that such New York “choice-of-law” provisions would “not be rejected by a New York Court.” (IRB-Brasil Resseguros, S.A. v Inepar Invs., S.A., 20 NY3d at 314.)
This case, in contrast, involves a transaction covering “in the aggregate” payments and potential liabilities far less than $250,000. Therefore, the statutory exception has no applicability. Since the New York choice-of-law provision in the lease has no apparent relationship or connection to the subject lease transaction between a Connecticut leasing company and a Connecticut resident lessee, the court will properly look to the law of the state having the closest connection to the case—Connecticut—before deciding whether to award prejudgment interest to plaintiff dating back to January 1999.
In connection with that inquiry, it is important to note that only “matters of substantive law fall within the course charted by choice-of-law analysis.” (Matter of Frankel v Citicorp Ins. Servs., Inc., 80 AD3d 280, 285 [2d Dept 2010], quoting Tanges v Heidelberg N. Am., 93 NY2d 48, 53 [1999].) Under Connecticut law, awards of statutory prejudgment interest are treated as “an element of the damages awarded on debts owing.” (See Paine Webber Jackson & Curtis, Inc. v Winters, 22 Conn App 640, 651-652, 579 A2d 545, 551 [1990].) The statute allowing such an award (Conn Gen Stat § 37-3a) is deemed a “substantive” rule. (Id.) New York likewise treats prejudgment interest as a “substantive” part of the plaintiff’s damages. (See Davenport v Webb, 11 NY2d 392, 394-395 [1962].) Therefore, under New York conflict of law principles, a New York court must apply Connecticut’s “substantive” rule governing prejudgment interest to plaintiffs claim in this case. (See Davenport v Webb.)
In pertinent part, Connecticut General Statutes § 37-3a (a) provides that “interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings ... as damages for the detention of money after it becomes payable.” Unlike under New York law, section *204 37-3a “does not require an award of interest in every case in which money has been detained after it has become payable.” (See Sosin v Sosin, 300 Conn 205, 228, 14 A3d 307, 322 [2011].) “Rather, an award of interest [under Connecticut law] is discretionary.” (Id.; accord Southern New England Contr. Co. v State, 165 Conn 644, 665, 345 A2d 550, 560 [1974] [“(t)he allowance of interest as an element of damages is . . . primarily an equitable determination and a matter lying within the discretion of the trial court”].)
In accordance with these principles, the Connecticut cases hold that the trial court’s determination to grant or withhold prejudgment interest “should be made in view of the demands of justice rather than through the application of any arbitrary rule.” (Sosin v Sosin, 300 Conn at 229, 14 A3d at 322; accord Southern New England Contr. Co. v State.) The court’s determination generally depends on whether the defendant’s detention of money “is or is not wrongful under the circumstances.” (Sosin v Sosin, 300 Conn at 229, 14 A3d at 322; accord Southern New England Contr. Co. v State.) “Several factors have been held relevant in determining whether money was wrongfully withheld, including whether the plaintiff diligently pursued its claim, and whether the amount sought was liquidated.” (Robert M. Langer, John T. Morgan, and David L. Belt, Unfair Trade Practices § 6.8 nn 35-36, citing cases [12 West’s Conn Prac Series 2014].) In Ek v Bowen (2 Conn Cir Ct 105, 108, 195 A2d 574, 576 [App Div 1963]), for example, prejudgment interest upon a property damage claim was denied where the trial of the case had been delayed for 10 years due to the plaintiffs “inaction and failure to prosecute his case with due diligence.”
Although the facts and circumstances at bar are somewhat different, they provide a sound factual basis for denying, in part, plaintiffs request for prejudgment interest dating back to 1999. Plaintiffs failure to give defendant proper due process notice of the lawsuit at the outset, combined with its delay in enforcing the default judgment, were the principal causes of the 15-year delay between the commencement date of the action and the date trial was finally held. Furthermore, although defendant had been advised in November 1998 that she could be held responsible for a substantial “shortfall” upon disposition of the leased vehicle, plaintiff presented no evidence that defendant was ever given notice, pre-suit, of the claimed “liquidated” amount that she allegedly owed. These facts, taken together, significantly affect the court’s calculus respecting *205 whether an award of prejudgment interest should date back to 1999.
On balance, granting plaintiff prejudgment interest seems justified only from the date defendant actually learned of the liquidated amount set forth in the default judgment following plaintiffs restraint upon her Massachusetts bank account. According to defendant’s uncontradicted assertion in her initial moving papers, she first learned about the restraint on March 14, 2013. In the absence of contrary evidence, plaintiff is awarded prejudgment interest only from that date, and its claim for prejudgment interest dating back to January 1999 is denied, as a matter of discretion, in accordance with Connecticut law and New York’s choice-of-law rules.
Finally, with respect to the rate of interest, Connecticut General Statutes § 37-3a does not mandate an award of interest at a rate of 10% per annum. Section 37-3a merely “establishes a maximum rate above which a trial court should not venture.” (Unfair Trade Practices § 6.8, quoting Sears Roebuck & Co. v Board of Tax Review of Town of W. Hartford, 241 Conn 749, 765-766, 699 A2d 81, 89-90 [1997].) Recent cases cited in Unfair Trade Practices § 6.8 n 61 typically have awarded prejudgment interest at a rate of 6% per annum. Under all the circumstances, the same amount is awarded here.
One last issue remains. Pursuant to the terms of the subject lease, plaintiff is entitled “reasonable” counsel fees as a prevailing party in this matter. On or before October 27, 2014, plaintiffs counsel may submit appropriate proof of its claim for counsel fees. Defendant’s attorney may submit opposing papers within two weeks thereafter. Unless the parties are otherwise advised, the issue will be determined, without a hearing, based upon the court’s review of the parties’ written and documentary submissions.
Conclusion
In conclusion, for the foregoing reasons, defendant’s jurisdictional objection under Daimler is rejected. This court properly exercises jurisdiction over defendant and plaintiffs claim pursuant to the forum selection clause of the lease. Upon proof of defendant’s remaining obligation for a shortfall owed under the terms of the lease, plaintiff is awarded judgment against defendant in the principal amount of $6,040. However, under applicable Connecticut law, prejudgment interest on that principal amount is limited to 6% per annum, running only from March *206 14, 2013. Final judgment shall await the court’s determination of plaintiffs claim for counsel fees as a prevailing party.