OPINION OF THE COURT
Robert R. Reed, J.
By order to show cause, defendants move to compel arbitration and stay the pending action.
Defendants, the YouNow companies, provide a “self-promotion live-video social entertainment platform that allows users to broadcast their live video via webcam or mobile device to be viewed in real-time by an online audience” (Sideman aff ¶ 2). Plaintiff Robert J. Ianuale was allegedly a user and a partner broadcaster until defendants deactivated his account and cut off his access to YouNow. Ianuale and his company Resorb Networks, Inc. bring claims for defamation, commercial disparagement, trade libel, and breach of contract, and seek punitive damages in addition to compensation. Defendants claim that Ianuale entered into an online agreement to arbitrate all claims related to YouNow’s services, while plaintiffs contend that they did not agree to arbitrate and that, if they did, another agreement supersedes the agreement with the arbitration provision.
Defendant Adi Sideman, the CEO of the YouNow companies, submits an affidavit in support of the order to show cause. Using pictures of screenshots, he explains how users access YouNow through a computer or an application (app) on a mobile device. Apart from minor variations, both methods of access require the same steps. Sideman explains that ‘YouNow’s sign in flow is designed in such a way that users must accept the YouNow Terms of Use . . . containing a mandatory arbitration clause, upon every sign-in to the Site and App” (Sideman aff ¶ 3). The sign-in page gives users the option to sign in using Twitter, Google, or Facebook. Underneath the list of sign-in options, the screen reads, “By signing in you agree to our terms of use.” Sideman states that the bolded phrase is a hyperlink to a document titled “YouNow Terms of Use” (Terms of Use) containing an arbitration provision. The user must click on or *977 tap the bolded phrase in order to view the Terms of Use. A user is not compelled to view the Terms of Use and can sign in without viewing them.
Next to the screenshot of the sign-in page, there is a screen-shot of the start of a document titled “License Agreement.” Sideman’s affidavit does not mention this agreement.
Printed versions of the Terms of Use are attached to Sideman’s affidavit. A screenshot of the beginning of the Terms of Use is shown at page 17 of the affidavit. Sideman does not clearly state that the hyperlink that is supposed to lead users to the Terms of Use leads to this screenshot.
As stated, users can put live videos on the YouNow website. A person whose videos attract “a significant number of followers” can become a partner broadcaster with YouNow via the Partner Program and receive payment from YouNow (Sideman aff ¶ 12). To apply to the Partner Program, a user goes to the YouNow partner page, which states that “we look for: . . . Content that conforms to our Terms of Service . . . Once you’re a Partner, we ask that you follow our Partner guidelines.” A button at the bottom of the partner page reads “Apply Now.” Upon clicking that button, users are taken to the partner broadcast application form. After completing the application, a user clicks “Submit” to send the application to YouNow.
If YouNow’s staff determines that the user is eligible to become a partner, YouNow sends an acceptance notification to that person requesting that he or she complete the application process by clicking “Continue.” Upon clicking that box, the user is taken to another screen with the heading “Partner Agreement.” At the bottom of the screen is a white box. Next to the white box, the screen reads, “I also agree to the Partner Agreement & Terms and Conditions.” Sideman says that the words “Terms and Conditions” are a hyperlink to YouNow’s Terms of Use, which, as stated, contains an arbitration provision. He does not state that there is a hyperlink to the Partner Agreement. The Partner Agreement does not contain an arbitration provision.
The partner broadcaster “has to check” the white box (Sideman aff ¶ 21). Under the white box is a blue box reading, “Yes, I agree,” which the partner broadcaster “must click in order to proceed” (id. ¶ 23). “Once the user checks off the [white] checkbox and taps the Yes, I Agree’ button, he officially becomes” a partner (id. ¶ 24). The user is next presented with a screen stating, ‘You’re In!” The court gathers that a user who *978 becomes a partner need only go through this process once and that, once someone becomes a partner, he or she follows the same sign-in process as other users.
Sideman states that each time that any user signs in, he or she is presented with the statement that by signing in he or she agrees to the Terms of Use. Sideman does not state that a person who wants to only view videos must sign in, or that only a person who wants to post videos must sign in. It is not clear whether he defines “user” as a person who just wants to watch or a person who wants to stream a video or both.
Sideman and Ianuale both state that Ianuale signed up as a user in July 2014 and applied to become a partner on November 22, 2014 and December 11, 2014. After being rejected on January 13, 2015, he was accepted on January 19, 2015. Allegedly on May 3, 2015, during a live broadcast, Ianuale spoke abusively to his girlfriend. On May 5, 2015, YouNow revoked his access to the service and terminated his partner status. In his opposing affidavit, Ianuale denies being abusive or engaging in any wrongful conduct.
With their motion, defendants produced a copy of a redacted Partner Agreement. During oral argument, defendants produced a printed whole copy of the Partner Agreement. The printed copy of the Partner Agreement is about IV2 pages long. It states that the partner broadcaster will perform creative broadcasts, and that YouNow and the partner are not employer and employee, but independent contractors. The Partner Agreement contains confidentiality and non-disparagement clauses. It contains a section about how YouNow pays the partner broadcasters. A section titled “Entire Agreement” states that the agreement is the parties’ entire agreement, and that it “supersedes any and all prior or contemporaneous agreements of the parties with respect to the subject matter contained herein.” The agreement states that it will be governed by New York law and that the parties consent to the sole and exclusive jurisdiction of the New York courts, “over any actions, suits or proceedings arising out of or relating to this Agreement.” The Partner Agreement further states that either party may terminate the agreement at any time and for any reason. Sideman does not clearly state whether a partner is able to view this agreement online.
There is another Partner Agreement. Defendants provide a screenshot of this one, which can be seen online, above the white box that the partner must check. It is not the same as *979 the Partner Agreement produced in printed form and discussed above. This Partner Agreement is a very short statement providing, among other things, that YouNow reserves the right to review the partner’s broadcasts and revoke earnings if partners “violate our Partner Agreement or Partner Guidelines.” Defendants do not say that the underlined phrases are links to documents.
The printed copies of the Terms of Use show it to be a much lengthier document than either of the Partner Agreements. The Terms of Use provides that users can use the service provided they comply with “these Terms.” It has 13 sections. Section 1 states that if a user does not agree to be fully bound by all the terms, “please do not access or use the service.” Section 4 states that the user agrees not to post content that is abusive, obscene, or inappropriate in any way. Section 5 is about YouNow’s right to shut down, deny, or limit a user’s access at any time for any reason at its sole discretion. Section 12 states that the user “waives all rights to trial in any action or proceeding instituted in connection with the service or these terms. Any controversy or claim arising out of or relating to the service or these terms shall be settled by binding arbitration” in accordance with the rules of the American Arbitration Association, to be conducted in New York County. Section 13 provides that the Terms of Use “constitute the entire agreement between the parties concerning the subject matter hereof.”
Ianuale states that the Partner Agreement governs his relationship with defendants and that under that agreement he is not obligated to arbitrate. Defendants state that the Partner Agreement applies only to disputes concerning partner financial matters and that all other matters require arbitration. Defendants argue that the parties’ instant disputes arise under the Terms of Use and must be arbitrated according to that agreement.
Ianuale opposes the motion to compel arbitration on several grounds, including that Sideman’s affidavit contains false statements about YouNow. Sideman’s affidavit alleges that the sign-in page states, “By signing in you agree to our terms of use,” and that this version of the page was in use as of January 2014. Ianuale’s affidavit alleges that, on January 9, 2014, the sign-in page did not contain such a statement. However, Ianuale does not allege that there was no such statement when he first signed in as a user in July 2014.
*980 Sideman alleges that, as of January 2014, the bolded phrase has been a hyperlink to the Terms of Use, but Ianuale points out that Sideman’s affidavit makes it seem like the hyperlink is not to the Terms of Use, but to the License Agreement. The court agrees that defendants do not clearly establish that the hyperlink does indeed connect users with the Terms of Use.
Ianuale also alleges that it is not true that users must accept the Terms of Use upon every sign in to the site and app. He states that, as of November 4, 2015, users can simply open their web browser and are automatically logged into the site or application without any notice about the Terms of Use. However, he does not state that he did not have to sign in each time that he used the site before he was barred from YouNow in May 2015.
A party is not obligated to arbitrate unless he or she consented to do so (Matter of Robert Stigwood Org. [Atlantic Recording Corp.], 83 AD2d 123, 126 [1st Dept 1981]). When one party seeks to compel the other to arbitrate their disputes, the court first determines whether the parties made a valid arbitration agreement (Harriman Group v Napolitano, 213 AD2d 159, 162 [1st Dept 1995]). The party seeking arbitration has the burden of establishing an agreement to arbitrate (Matter of Allstate Ins. Co. v Roseboro, 247 AD2d 379, 380 [2d Dept 1998]; see Seneca Ins. Co. v Secure-Southwest Brokerage, 294 AD2d 211, 212 [1st Dept 2002]).
The creation of online contracts “has not fundamentally changed the principles of contract” (Register.com, Inc. v Verio, Inc., 356 F3d 393, 403 [2d Cir 2004]). “To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms” (Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp., 93 NY2d 584, 589 [1999]). There must be an offer followed by an acceptance (id.). In regard to online contracts, courts look for evidence that a website user had actual or constructive notice of the terms of using the website (Schnabel v Trilegiant Corp., 697 F3d 110, 120 [2d Cir 2012]). Where the supposed assent to terms is mostly passive, as it usually is online, courts seek to know “whether a reasonably prudent offeree would be on notice of the term at issue” (id.), and whether the terms of the agreement were “reasonably communicated” to the user (Fteja v Facebook, Inc., 841 F Supp 2d 829, 833, 835 [SD NY 2012]; Starke v Gilt Groupe, Inc., 2014 WL 1652225, *2-3, 2014 US *981 Dist LEXIS 58006, *6-7 [SD NY, Apr. 24, 2014, No. 13 Civ 5497 (LLS)]; Jerez v JD Closeouts, LLC, 36 Misc 3d 161, 168 [Nassau Dist Ct 2012]).
Defendants argue that the accessibility of the Terms of Use means that users receive constructive knowledge of that agreement. Berkson v GOGO LLC (97 F Supp 3d 359, 401-402 [ED NY 2015]) lists three general principles regarding the enforceability of Internet agreements. First, the website must be designed such that a “reasonably prudent user” will be placed on “inquiry notice” of the terms of using the website (id. at 401 [internal quotation marks and citation omitted]). Second, the design and content of the website must encourage the user to examine the terms “clearly available through hyperlinkage” (id.; see Whitt v Prosper Funding LLC, 2015 WL 4254062, *5, 2015 US Dist LEXIS 91413, *10-11 [SD NY, July 14, 2015, No. 1:15-cv-136-GHW] [collecting cases for the proposition that a reasonably prudent offeree has sufficient constructive notice of agreement whose terms are viewable through a hyperlink]; Bassett v Electronic Arts Inc., 2015 WL 1298644, *4, 2015 US Dist LEXIS 36175, *13-14 [ED NY, Feb. 9, 2015, No. 13-CV-04208 (MKB)(SMG)] [collecting cases for the proposition that federal courts have consistently enforced clauses contained in online agreements that could be viewed only by following a conspicuous hyperlink]). Third, agreements will not be enforced where the link to the agreement is “buried at the bottom of a webpage or tucked away in obscure corners of the website” (Berkson, 97 F Supp 3d at 401-402; Jerez, 36 Misc 3d at 169-170 [the user did not agree to the terms, which were “submerged” on a web page that could only be found by clicking on an inconspicuous link on the company’s “About Us” page]).
In this case, defendants do not show that their website adheres to the three general principles. It is not clear that the phrase “Terms of Use” is a hyperlink which takes the user to the Terms of Use or to the License Agreement or another place. Defendants allege that the Terms of Use are on the website, but it is not clear where on the website. Not knowing where the Terms of Use are located, the court cannot conclude that a user on YouNow who was “[a] reasonably prudent offeree would have noticed the” Terms of Use on the website (Fteja, 841 F Supp 2d at 841 [internal quotation marks omitted]; see also Zaltz v JDATE, 952 F Supp 2d 439, 454 [ED NY 2013]). Defendants, therefore, do not establish that Ianuale had *982 constructive knowledge of the agreement to arbitrate and that he assented to the agreement.
Courts have determined that the primary means of contracting on the Internet are clickwrap agreements and browsewrap agreements (Edme v Internet Brands, Inc., 968 F Supp 2d 519, 525 [ED NY 2013]), and the variations on those (Berkson, 97 F Supp 3d at 401).
“Browsewrap exists where the online host dictates that assent is given merely by using the site. Click-wrap refers to the assent process by which a user must click ‘I agree,’ but not necessarily view the contract to which she is assenting. Scrollwrap requires users to physically scroll through an internet agreement and click on a separate T agree’ button in order to assent to the terms and conditions of the host website. Sign-in-wrap couples assent to the terms of a website with signing up for use of the site’s services” (Berkson, 97 F Supp 3d at 394-395).
YouNow states that the website is designed so that a user is notified of the existence and applicability of the site’s “terms of use” when proceeding through the website’s sign-in or login process (id. at 399). That could be characterized as a sign-in-wrap. It also has elements of a clickwrap, in that the user need not view the contract. Plaintiffs contend that the agreement is a browsewrap, in that use is possible without being given notice of the Terms of Use. However categorized, online agreements are enforceable on the ground that the users have notice of the agreement and “an effective opportunity to access terms and conditions” (id. at 400; Fteja, 841 F Supp 2d at 831-832). In this case, defendants do not show that a user has an effective opportunity to access the Terms of Use.
Defendants argue that Ianuale received actual knowledge of the Terms of Use. On March 10, 2015, after Ianuale was accepted into the partner program, YouNow implemented a tracking system that shows what part of the website each user is visiting minute to minute. Defendants produced a document purportedly showing that, from March 10, 2015 until May 5, 2015, the date that Ianuale was banned from YouNow, he spent 1,162 minutes on a category called “Policy,” which includes the Terms of Use. Ianuale states that the tracking evidence shows continuous access from about 3 p.m. on March 22, 2015 to 10 a.m. on March 23, 2015, and that all that proves is that a *983 browser window had been left open on a computer. He also says that the tracking evidence does not show if he was the one viewing those pages. The drawback of the tracking evidence, as presented, is that defendants neither sufficiently lay a foundation for it, nor adequately explain how they know that it reflects activity on plaintiff’s user account.
Defendants also state that on March 31, 2015 they sent an email to all partners, including plaintiff, and that the bottom of the email states that partners should adhere to the “Terms of Service.” It is not clear if “Terms of Service” is the same as the Terms of Use. Defendants do not allege that the phrase is a hyperlink or that recipients of the email are instructed where to find those terms or the Terms of Use. For these reasons, receipt of the email does not constitute notice of the Terms of Use with the arbitration provision.
Accordingly, it is ordered that defendants’ motion to compel arbitration is denied.