Petkanas v Petkanas (2021 NY Slip Op 00581)





Petkanas v Petkanas


2021 NY Slip Op 00581


Decided on February 3, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 3, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
HECTOR D. LASALLE
ANGELA G. IANNACCI, JJ.


2017-09071
 (Index No. 15292/13)

[*1]Evan Petkanas, etc., appellant, et al., plaintiff,
v
Dean Petkanas, et al., respondents.


Sher Tremonte, LLP, New York, NY (Justin M. Sher and Yonatan Y. Jacobs of counsel), for appellant.
Phillipson & Uretsky, LLP, New York, NY (Jonathan C. Uretsky of counsel), for respondents.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the plaintiff Evan Petkanas appeals from an order of the Supreme Court, Queens County (Chereé A. Buggs, J.), dated June 30, 2017. The order, insofar as appealed from, granted those branches of the defendants' motion which were for summary judgment dismissing the first and fourth causes of action in the amended complaint insofar as asserted by the plaintiff Evan Petkanas.
ORDERED that the order is affirmed insofar as appealed from, with costs.
In this action, inter alia, to recover damages for breach of contract, the plaintiff Evan Petkanas (hereinafter the plaintiff) alleges that he entered into an agreement with the defendant Dean Petkanas (hereinafter the defendant), whereby the plaintiff was to receive an interest in the defendant KannaLife Sciences, Inc. (hereinafter KannaLife), in consideration for providing certain services and/or funding towards the business of KannaLife. After discovery, the defendants moved for summary judgment dismissing the amended complaint. In an order dated June 30, 2017, the Supreme Court, among other things, granted those branches of the defendants' motion which were for summary judgment dismissing the first and fourth causes of action insofar as asserted by the plaintiff. The plaintiff appeals.
We agree with the plaintiff's contention that the defendants waived the defense of lack of standing, as they failed to raise that affirmative defense in their answer or in a pre-answer motion for dismissal (see CPLR 3211[e]; McLean v Sachem Cent. Sch. Dist., 186 AD3d 470, 472; JNG Constr., Ltd. v Roussopoulos, 170 AD3d 1136, 1140).
Furthermore, the defendants failed to establish that they were entitled to summary judgment dismissing the first and fourth causes of action insofar as asserted by the plaintiff, which were premised on the defendants' alleged breach of contract, based on the statute of frauds. General Obligations Law § 5-701(a)(1) provides, as relevant, that an agreement is void unless the agreement or some note or memorandum thereof is in writing and subscribed by the party to be charged, where the agreement "[b]y its terms is not to be performed within one year from the making thereof." "[T]he fact that full performance within one year [is] unlikely or improbable does not make the [*2]agreement subject to the statute of frauds, for the statute encompasses only those agreements which, by their terms, 'have absolutely no possibility in fact and law of full performance within one year'" (Financial Structures Ltd. v UBS AG, 77 AD3d 417, 418, quoting D & N Boening v Kirsch Beverages, 63 NY2d 449, 454; see Stillman v Kalikow, 22 AD3d 660, 661-662).
Here, the defendants failed to demonstrate, prima facie, that it would have been impossible to perform the purported agreement at issue within one year. The plaintiff testified at his deposition that he agreed to provide "support" to KannaLife until it became "viable." The defendants submitted evidence showing, inter alia, that KannaLife would not be expected or able to develop its primary product for sale for at least several years after the date of the purported agreement. However, the record shows that in addition to that primary product, KannaLife sold other products, and planned to develop additional products. The defendants did not specifically demonstrate that it would be impossible for KannaLife to become "viable" within one year, based on the revenue from the sale of such products.
Additionally, the defendant asserted in an affidavit that the plaintiff specifically proposed to invest a certain sum in KannaLife, locate investors to contribute a certain sum, and to lobby for the implementation of certain regulations. The defendants submitted no evidence showing that those acts could not be performed within one year. Under these circumstances, the defendants were not entitled to summary judgment dismissing the causes of action sounding in breach of contract based on General Obligations Law § 5-701(a)(1) (see Can Man Carting, LLC v Spiezio, 165 AD3d 1029, 1031; Morrone v Costagliola, 151 AD3d 1055, 1056; JNG Constr., Ltd. v Roussopoulos, 135 AD3d 709, 710).
The defendants contend that the purported agreement was not a "sale of securities" that is exempted from the statute of frauds, pursuant to UCC 8-113. UCC 8-113(a) provides, as relevant, that a "contract . . . for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party against whom enforcement is sought, even if the contract or modification is not capable of performance within one year of its making." The defendants failed to establish that the subject agreement, which purportedly provided for the granting of an interest in KannaLife in consideration for certain funds and services, was not a contract "for the sale of securit[ies]," within the meaning of this statute (see UCC 8-113; see also Gross v Vogel, 81 AD2d 576, 577; Dillon v Peretti, 176 AD2d 497, 498).
However, the defendants established, prima facie, that no enforceable agreement was formed, and, in opposition, the plaintiff failed to raise a triable issue of fact. "'To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. . . . Generally, courts look to the basic elements of the offer and acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract'" (1912 Newbridge Rd., LLC v Liantonio, 172 AD3d 962, 963-964, quoting Agosta v Fast Sys. Corp., 136 AD3d 694, 694 [internal quotation marks omitted]; see Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp., 93 NY2d 584, 589; 26th St. Partners, LLC v Federation of Orgs. for the N.Y. State Mentally Disabled, Inc., 182 AD3d 543, 543-544). "'In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds'" (Flores v Lower E. Side Serv. Ctr., Inc., 4 NY3d 363, 368, quoting Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 399).
Under the circumstances presented, the defendants demonstrated that no "meeting of the minds" occurred. The plaintiff alleges that he and the defendant entered into an agreement for the plaintiff to provide certain financial support and services to KannaLife. However, the defendant testified that around this time, the plaintiff specifically proposed to invest $150,000 in KannaLife, and to locate investors who would invest an additional $1 million, in exchange for a 17% share of KannaLife, and that the defendant declined that proposal. The defendants also submitted evidence showing that certain payments made by Stone Engineering, a company owned by the plaintiff, to the defendant, which the plaintiff claimed constituted an investment in KannaLife, were initially [*3]characterized by Stone Engineering as "consulting fees," and that the defendant performed various services for Stone Engineering in consideration for such payments. The defendants submitted evidence showing that in addition to bookkeeping work, the defendant was compensated by Stone Engineering for additional tasks for Stone Engineering such as visits to sites at which it performed engineering services, and that the payments for consulting fees represented compensation for such work. This evidence established, prima facie, that there was no "meeting of the minds" and that therefore, no enforceable contract was formed (see Kelley v Bryan Ins. Agency, Inc., 176 AD3d 1042, 1045; Gleitman v Zorbas, 164 AD3d 660).
In response, the plaintiff failed to raise a triable issue of fact as to the formation of an enforceable agreement. The plaintiff asserted in an affidavit that in late 2011 or early 2012, he agreed to provide "consulting" services to KannaLife and to provide office space for the defendant to use on a part-time basis for KannaLife business. The plaintiff testified at his deposition that in February 2012, he agreed to pay a salary to the defendant for working as a part-time "bookkeeper" at the plaintiff's business, Stone Engineering. The plaintiff asserted that these payments served the "dual purpose" of paying the defendant for his work at Stone Engineering, and as an investment in KannaLife.
However, the plaintiff acknowledged that these payments were made for "consulting" fees, and also acknowledged that the defendant performed further work at Stone Engineering, in addition to his usual bookkeeping duties. Furthermore, the plaintiff testified that it was not until May of 2012, several months after he purportedly began investing in KannaLife, that the defendant allegedly offered to grant to him a 17% interest in KannaLife. Notably, the plaintiff did not testify with specificity as to the consideration that he was to provide, in exchange for such interest, apart from testifying that he had agreed to provide "support" to KannaLife until it became "viable."
Under these circumstances, the defendants showed as a matter of law that no "meeting of the minds" occurred, and that no enforceable contract was formed (see Kelley v Bryan Ins. Agency, Inc., 176 AD3d at 1045; Gleitman v Zorbas, 164 AD3d 660; see also Computer Assoc. Intl., Inc. v U.S. Balloon Mfg. Co., Inc., 10 AD3d 699, 700). Therefore, the defendants were entitled to summary judgment dismissing the first and fourth causes of action in the amended complaint insofar as asserted by the plaintiff, which sought relief on the basis of an alleged breach of contract.
DILLON, J.P., CHAMBERS, LASALLE and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court