Rigano v Uber Tech., Inc. (2024 NY Slip Op 51381(U))

[*1]

Rigano v Uber Tech., Inc.

2024 NY Slip Op 51381(U)

Decided on October 2, 2024

Supreme Court, Westchester County

Everett, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 2, 2024
Supreme Court, Westchester County

Rosa Anna Rigano, Petitioner,

against
Uber Technologies, Inc., UBER U.S.A., LLC, Respondents.

Index No. 72587/2023

Attorney for Plaintiff:
ADAM ERIC DEUTSCH, ESQ. 
Fiedler Deutsch, LLP
81 Main St Unit 304
White Plains, NY 10601
Phone: (914) 993-0393
E-mail: adeutsch@fiedlerdeutsch.com
Attorney for Defendants:
ALEXIS TAYLOR GROSSMAN, ESQ.
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd St # 23
New York, NY 10017
Phone:212-490-3000
E-mail: alexis.grossman@wilsonelser.com

David F. Everett, J.

Upon consideration of the papers filed in the New York State Courts Electronic Filing System (NYSCEF) Doc. Nos. 1-48, relative to the petition to vacate respondents' notice of intention to arbitrate and to permanently stay the arbitration, as there is no valid agreement to arbitrate, and the motion by respondents Uber Technologies, Inc. and Uber U.S.A., LLC (collectively Uber) for an order: (1) dismissing the petition; (2) compelling and directing petitioner to arbitrate her claims against Uber (CPLR 7503); (3) staying this proceeding and the related personal injury action filed in the Westchester County Supreme Court under Index No. 65453/2023 and any cross-claims alleged against Uber until after the arbitration between the parties is completed; and (4) for such other and further relief as the Court deems just and appropriate, the Court determines as follows:
[*2]Background
The Personal Injury Action
On August 18, 2023, plaintiffs Anthony Coppola, Antonietta Rigano, Petitioner, F.C., an infant, and Agatino Rigano (plaintiffs) commenced a personal injury action against defendants Uber; Zaza Robakidze (Robakidze), Maruf Azimov (Azimov), Rustamjon Express Corp. (Rustamjon Express) (collectively the Driver Defendants); and Leonard Zuckerman and Ellen Zuckerman (collectively the Zuckerman Defendants) by filing a summons and complaint in the Westchester County Supreme Court under Index No. 65453/2023.
The complaint alleges that Uber employed drivers, including Robakidze and Azimov, to provide transportation for users of its service through an online-enabled application called the Uber App; that on July 19, 2023, petitioner had an account with Uber, and used the Uber App for transportation; that the motor vehicle Uber assigned to fulfill petitioner's request for transportation was owned and operated by Robakidze and/or Azimov and/or Rastamjon Express; and that this vehicle, in which plaintiffs were passengers, came into contact with the motor vehicle owned and operated by the Zuckerman Defendants, and as a result, plaintiffs were injured. Plaintiffs allege, inter alia, that their injuries were caused by Uber's carelessness, recklessness, and negligence in the supervision, management, direction, and control of the Driver Defendants, and in facilitating the use of the Uber App by Robakidze and Azimov.
On October 25, 2023, Uber filed an answer, asserting 57 affirmative defenses, including one alleging that the dispute is subject to an arbitration agreement between the parties. Uber did not allege any counterclaims or cross-claims.
On November 8, 2023, Uber served a notice of intention to arbitrate (the Notice; NYSCEF Doc No. 15) on petitioner's counsel. In the Notice, Uber indicated that petitioner had agreed to an arbitration agreement when she used the Uber App on February 26, 2023, and before that, on August 18, 2022. The Notice includes as exhibits a copy of the 2023 Terms of Use (the Terms of Use), as well as a screenshot of the in-app blocking popup screen, which states: "We've updated our terms" and "We encourage you to read our updated Terms in full." There are two hyperlinks below, one for "Terms of Use" and one for "Privacy Notice," and a checkbox, next to which it states: "By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice." Below the checkbox and this statement is a "Confirm" button (Petition, Exhibit A; NYSCEF Doc No. 2).[FN1]

The Instant Petition to Stay Arbitration
On December 26, 2023, petitioner commenced the instant proceeding by filing a petition (NYSCEF Doc No. 1). The petition seeks to vacate the Notice and to permanently stay arbitration pursuant to CPLR 7503 (b) and (c), on the basis that no valid arbitration agreement was made.
The petition alleges that petitioner was not aware of the arbitration agreement when she registered for the Uber App and never intended to waive her constitutional right to a trial by jury or to handle disputes by arbitration; that Uber's registration process did not adequately communicate an offer to arbitrate in a definite manner; and that neither the agreement nor the [*3]popup screen placed her on notice that she was agreeing to arbitration and waiving her right to a jury trial.
Petitioner argues that the Uber App does not put a reasonably prudent person on inquiry notice of the Terms of Use; that the popup screen did not explicitly explain or state that she was agreeing to an arbitration agreement; and that although the Uber App contained different colored hyperlinks to the Terms of Use, they were not sufficient to give her adequate notice of the offer to arbitrate.
Petitioner contends that the agreement lacked the clarity and conspicuousness necessary to secure informed consent; that the agreement does not include a definition of arbitration or a link to a definition; and that the agreement does not explain the difference between binding and non-binding arbitration.
Finally, petitioner concludes that the popup screen did not provide her with an unambiguous method of accepting or declining the offer to arbitrate; that the agreement is a clickwrap agreement, pursuant to which a user must click "I agree" but is not required to view the agreement; and that she was not required to open the Terms of Use, physically scroll through the agreement, or read it before agreeing.
In her affidavit is support of the petition, petitioner avers, inter alia, that she did not agree with Uber to arbitrate any claims; and that when she registered for the Uber App, she was unaware of, and never saw an arbitration agreement.
Discussion
Agreement to Arbitrate
CPLR 7503 (a) provides:
A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. Where there is no substantial question whether a valid agreement was made or complied with, and the claim sought to be arbitrated is not barred by limitation under subdivision (b) of section 7502, the court shall direct the parties to arbitrate. Where any such question is raised, it shall be tried forthwith in said court. If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action. If the application is granted, the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration.
In God's Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP (6 NY3d 371, [2006]), stated the following regarding arbitration agreements:
Although CPLR 7501 confers jurisdiction on courts to enforce written arbitration agreements, "[t]here is no requirement that the writing be signed so long as there is other proof that the parties actually agreed on it" (Crawford v Merrill Lynch, Pierce, Fenner & Smith, 35 NY2d 291, 299 [1974] [internal quotation marks deleted]; see also Flores v Lower E. Side Serv. Ctr., Inc., 4 NY3d 363, 370 [2005]). A party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' "clear, explicit and unequivocal" agreement to arbitrate (Matter of Waldron [Goddess], 61 NY2d 181, 183 [1984]), but our case law makes it clear that a signature is not required.
In Scotti v Tough Mudder Inc. (63 Misc 3d 843, 849-850 [Sup Ct, Kings County 2019]), the Court recognized the nuances of online contracts:
"The creation of online contracts 'has not fundamentally changed the principles of contract' " (Resorb Networks, Inc. v YouNow.com, 51 Misc 3d 975, 980-981 [Sup Ct, NY County 2016], quoting Register.com, Inc. v Verio, Inc., 356 F3d 393, 403 [2d Cir 2004]). The question of whether there is agreement to accept the terms of an online contract turns on the particular facts and circumstances. Courts generally look for evidence that a website user had actual or constructive notice of the terms by using the website (see Schnabel v Trilegiant Corp., 697 F3d 110, 120 [2d Cir 2012]). Where the person's alleged consent is solely online, courts seek to determine whether a reasonably prudent person would be put on notice of the provision in the contract, and whether the terms of the agreement were reasonably communicated to the user (id. at 120; see Fteja v Facebook, Inc., 841 F Supp 2d 829, 833, 835 [SD NY 2012]; Starke v Gilt Groupe, Inc., 2014 WL 1652225, *2-3, 2014 US Dist LEXIS 58006, *6-7 [SD NY, Apr. 24, 2014, No. 13 Civ 5497(LLS)]; Jerez v JD Closeouts, LLC, 36 Misc 3d 161, 168 [Nassau Dist Ct 2012]). In Specht v Netscape Communications Corp. (306 F3d 17 [2d Cir 2002]), the court emphasized that "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility" (id. at 35; see Starke v Squaretrade, Inc., 2017 WL 3328236, *5, 2017 US Dist LEXIS 122599, *9-12 [ED NY, Aug. 3, 2017, 16-CV-7036 (NGG)], affd 913 F3d 279 [2d Cir 2019]).
In Berkson v Gogo LLC (97 F Supp 3d 359, 394-403 [ED NY 2015]), the four "general types of online consumer contracts [are identified as] (a) browsewrap; (b) clickwrap; (c) scrollwrap; and (d) sign-in-wrap." As explained by Judge Weinstein in Berkson:
"Browsewrap exists where the online host dictates that assent is given merely by using the site. Clickwrap refers to the assent process by which a user must click 'I agree,' but not necessarily view the contract to which she is assenting. Scrollwrap requires users to physically scroll through an internet agreement and click on a separate 'I agree' button in order to assent to the terms and conditions of the host website. Sign-in-wrap couples assent to the terms of a website with signing up for use of the site's services . . . ." (Id. at 394-395; see Applebaum v Lyft, Inc., 263 F Supp 3d 454, 465 [SD NY 2017] [applying New York law and denying motion to compel arbitration where notice of contract terms was insufficient to bind plaintiff].)
Uber moves to dismiss the petition, to compel arbitration, and to stay the personal injury action, arguing that the parties entered into a valid and enforceable arbitration agreement. Uber argues that the Appellate Division, First Department, has already found in its favor on this issue in the following cases: Brooks v Lang Yang (216 AD3d 505, 506 [1st Dept 2023]), Mejia v Linares (219 AD3d 1251, 1252 [1st Dept 2023]), and Wu v Uber Techs., Inc. (219 AD3d 1208 [1st Dept 2023]).
In Brooks (216 AD at 506), the Court stated:
Uber sustained its burden of demonstrating that the parties had an explicit and unequivocal agreement to arbitrate. The unrebutted evidence reflected that prior to commencement of the instant action, plaintiff had agreed to be bound by the arbitration agreement when he affirmatively indicated and confirmed, by taking two separate [*4]actions, that he had reviewed and agreed to Uber's updated terms of use, which were overtly hyperlinked as part of the pop-up screen and sufficient to form a binding contract (Starke v SquareTrade, Inc., 913 F3d 279, 289 [2d Cir 2019]).
Moreover, plaintiff was on inquiry notice of the updated Terms of Use that required any disputes between the parties to be resolved by arbitration. Although a clickwrap agreement's terms and conditions must be clear and conspicuous, they need not all be simultaneously and immediately visible; the terms may be binding and enforceable even if they are only accessible through a hyperlink (Meyer v Uber Tech., Inc., 868 F3d 66, 75-78 [2d Cir 2017] ["That the Terms of Service were available only by hyperlink (did) not preclude a determination of reasonable notice" because "a reasonably prudent . . . user knows that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found"]). The keys to enforceability are a reasonable indication of the existence of the additional terms and the user's being required to manifest assent to them (see e.g. Feldman v Google, Inc., 513 F Supp 2d 229, 237 [ED Pa 2007]).
In Mejia (219 AD3d at 1252), the Court noted that "Uber explained the app's registration process and submitted a screenshot of the 2016 app's in-application popup screen, which stated, 'By clicking 'Create Account,' you agree to Uber's Terms and Conditions.' The phrase 'Terms and Conditions' was in blue, indicating a hyperlink. The terms and conditions then in effect included an arbitration agreement, and the heading 'DISPUTE RESOLUTION' was both capitalized and bolded." The Court found the evidence "was sufficient to establish that the 2016 terms of use included an enforceable arbitration agreement to which plaintiff assented (see Meyer v Uber Tech., Inc., 868 F3d 66, 76 [2d Cir 2017])." The Court added:
Plaintiff acknowledges that Uber's 2021 terms of use created an explicit and unequivocal agreement to arbitrate (Brooks v Lang Yang, 216 AD3d 505, 506 [1st Dept 2023]), contending instead that the 2021 terms are unconscionable. However, according to the delegation provision in the 2021 terms, plaintiff's arguments raising unconscionability must be decided by the arbitrator. None of the arguments in plaintiff's motion to stay arbitration specifically addressed the delegation provision (see Wu v Uber Tech., Inc., 219 AD3d 1208 [1st Dept 2023]; see also Rent-A-Center, West, Inc. v Jackson, 561 US 63, 72 [2010]).
Similarly, in Wu (219 AD3d at 1208-1209), the Court found that an agreement to arbitrate existed. The Court explained:
Uber established, prima facie, the existence of that agreement by submitting evidence showing that plaintiff electronically signed its January 18, 2021 updated terms of use (the terms), which included an arbitration agreement, by clicking a checkbox and button that confirmed that she reviewed and consented to the terms (see id.; see also Mencher v Weiss, 306 NY 1, 4 [1953]; Weissman v Revel Tr., Inc., 217 AD3d 430 [1st Dept 2023]; Kowalchuk v Stroup, 61 AD3d 118, 121 [1st Dept 2009]; State Technology Law §§ 302, 304 [2]). Plaintiff failed to raise a triable issue of fact as to the existence of an agreement to arbitrate . . . .
Although plaintiff disputes whether she had inquiry notice of the terms, she has not affirmatively denied actual notice (see Starke v SquareTrade, Inc., 913 F3d 279, 292 n 9 [*5][2d Cir 2019]; Meyer v Uber Tech., Inc., 868 F3d 66, 76-77 [2d Cir 2017]). Moreover, Uber established inquiry notice, as a matter of law, by submitting the email and in-application popup screen that informed plaintiff that the changes to terms affected arbitration rights and included prominent hyperlinks to the terms in font commonly understood to signify hyperlinks (see Brooks, 216 AD3d 505; Weissman, 217 AD3d at 430-431).
PJI 4:1 summarizes as follows:
A valid clickwrap agreement—an online agreement that users agree to by clicking a button or checking a box that reads "I agree"—puts the user on inquiry notice of a contract's terms, including an agreement to arbitrate, Weissman v Revel Transit, Inc., 217 AD3d 430, 190 NYS3d 46 (1st Dept 2023); see Castro v Jem Leasing, LLC, 214 AD3d 475, 183 NYS3d 744 (1st Dept 2023) (while Uber contended that plaintiff agreed to be bound by arbitration agreement when she registered for rider app, Uber failed to establish that then-current Uber app constituted valid clickwrap agreement putting plaintiff on inquiry notice of contract terms, including arbitration agreement). Although a clickwrap agreement's terms and conditions must be clear and conspicuous, they need not all be simultaneously and immediately visible; the terms may be binding and enforceable even if they are only accessible through a hyperlink, Brooks v Lang Yang, 216 AD3d 505, 190 NYS3d 309 (1st Dept 2023). The keys to enforceability of a clickwrap agreement are a reasonable indication of the existence of the additional terms and the user's being required to manifest assent to them, id.; see CPLR Article 75 (arbitration).
Uber argues that petitioner had actual and inquiry notice of the Terms of Use; that by checking the box on the popup screen, petitioner indicated that she had actual notice of the Terms of Use; that the popup screen placed petitioner on inquiry notice, because she was presented with clear, conspicuous and uncluttered notice of the Terms of Use, which contained an arbitration agreement; that the hyperlinks were clear and conspicuous, as they were in bright blue color clearly signifying a hyperlink; and that she was encouraged to read the Terms of Use in full.
Uber's position is that petitioner was required to affirmatively check the box to consent; that petitioner could not use the Uber App without consenting; that the popup screen presented petitioner with an opportunity to read the arbitration agreement; and that petitioner's argument that she did not read the Terms of Use prior to acceptance does not render the agreement invalid, because she was still on inquiry notice of the Terms of Use.
Uber contends that petitioner assented to the Terms of Use when she took two affirmative steps to move beyond the popup screen and continue use of the Uber App: (1) by checking the box stating that she had reviewed and agreed to the Terms of Use and (2) by clicking the Confirm button. Uber asserts that petitioner's general objections based on the overall fairness of the contract and lack of informed consent are without merit, because petitioner expressly agreed to delegate those issues to the arbitrator.
Uber submits the affidavit of Alejandra O'Connor (O'Connor; NYSCEF Doc No. 18), [*6]Lead Paralegal for Uber Technologies, Inc.[FN2]
O'Connor asserts that Uber is a technology company that develops and maintains digital multi-sided marketplace platforms, such as the Rides platform, which connects riders with independent drivers. O'Connor maintains that to use Uber's platforms, a user must register for an account and agree to the Terms of Use.
O'Connor explains that on February 26, 2023, petitioner was presented with an in-app blocking popup screen with the header "We've updated our terms"; that the popup screen also stated in large type, "We encourage you to read our Updated Terms in full" and under that message were the phrases "Terms of Use" and "Privacy Notice," which were displayed underlined and in bright blue text, all of which set the text apart from other text on the screen and indicated a hyperlink; and that when a user clicked on either hyperlink for the Terms of Use or Privacy Notice, respectively, it would be displayed.
O'Connor further explains that the popup screen precluded the use of the Uber App unless a user checked the box on the screen and clicked the "Confirm" button at the bottom of the screen; that the popup screen expressly stated that: "By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice"; that when a user clicks the checkbox and clicks the "Confirm" button, a record of this consent is electronically captured, recorded, maintained and stored in the ordinary course of Uber's business at the time of the events being recorded; and that this record is linked to the user's email address and/or mobile telephone number associated with the user's account. O'Connor asserts that a record of the user's consent cannot be manually edited.
O'Connor notes that she personally searched Uber's database for petitioner's account by entering petitioner's email address and phone number; and that Uber's records indicate that petitioner checked the box and tapped "Confirm" on February 26, 2023.
Attached to O'Connor's affidavit are a copy of the in-app blocking popup screen, Uber's checkbox consent history, the Terms of Use, and the Notice.
The Terms of Use provides the following notice of the existence of the arbitration agreement:
IMPORTANT: PLEASE BE ADVISED THAT THESE TERMS OF SERVICE CONTAIN PROVISIONS THAT GOVERN HOW YOU CAN BRING CLAIMS BETWEEN YOU AND UBER, INCLUDING THE ARBITRATION AGREEMENT IN SECTION 2 BELOW. . . PLEASE REVIEW THE ARBITRATION AGREEMENT IN SECTION 2 CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION, YOU ARE WAIVING YOUR RIGHT TO SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY TRIAL ON YOUR CLAIMS. BY AGREEING TO THESE TERMS OF SERVICE, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THESE TERMS OF SERVICE AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION (Uber's Exhibit I: [*7]NYSCEF Doc. No. 18).[FN3]
Section 2(a) of the Terms of Use, titled "Agreement to Binding Arbitration Between You and Uber", states, in relevant part:
Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to . . . (ii) your access to or use of the Services at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), . . . will be settled by binding individual arbitration between you and Uber, and not in a court of law (Uber's Exhibit I: NYSCEF Doc. No. 18).
In opposition, petitioner argues that she did not have actual notice of the arbitration agreement, as she averred in her affidavit; that she did not have inquiry notice of the arbitration agreement, for the reasons already stated in the petition; and that the Uber App did not require her to check a separate box indicating that she had read, understood or consented to the arbitration agreement or require acknowledgement of the agreement as a necessary step to proceed with the registration.
Petitioner argues that Wu is distinguishable from the instant matter, because in Wu, the plaintiff did not affirmatively deny actual notice; that in Wu, Uber established inquiry notice by submitting an email and popup screen that informed the plaintiff that the changes to the terms affected arbitration rights (Wu, 219 AD3d at 1209); and that in this matter, the popup screen did not indicate that there were any changes to the Terms of Use that affected arbitration rights.
Petitioner contends that although Brooks held that Terms of Use may be binding and enforceable even if they are only accessible through a hyperlink, the inquiry then becomes what a "reasonably prudent user" knows regarding hyperlinks. Petitioner asserts that she cannot be held to have reasonably assumed that the hyperlinked Terms of Use included an arbitration agreement.
Petitioner argues that since she did not have actual or inquiry notice of the arbitration agreement, her checking the box and clicking the "Confirm" button were not sufficient to bind her to the arbitration agreement.
In reply, Uber argues that petitioner's argument that she was unaware of the arbitration agreement is unfounded; and that on a prior occasion, petitioner checked the same box and pressed the same Confirm button to agree to the 2022 Terms, which have similar language regarding an agreement to arbitrate.
Uber contends that petitioner's "fairness arguments" regarding her lack of knowledge of the Terms of Use must be determined by the arbitrator pursuant to the delegation clause, which petitioner has not challenged.
Here, it is undisputed that the arbitration agreement at issue is governed by the Federal Arbitration Act (Uber's Exhibit I: Terms of Use, par. 2(c) [". . . the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate [*8]commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto."]).
In Wu (78 Misc 3d 551, 566-568 [Sup Ct, Bronx County 2022]), the Court explained:
The FAA "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce." (Ragone v Atlantic Video at Manhattan Ctr., 595 F3d 115, 121 [2d Cir 2010] [internal quotation marks and citation omitted].) Section 2 of the FAA provides that
"[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 USC § 2.)
There is no dispute here that the FAA applies to the arbitration agreement.
Federal policy strongly favors arbitration. (E.g. AT&T Mobility LLC v Concepcion, 563 US 333, 339 [2011].) "[T]he FAA was 'enacted [. . .] to replace judicial indisposition to arbitration,' . . . and is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.' " (Ross v American Express Co., 547 F3d 137, 142 [2d Cir 2008], quoting Hall Street Associates, L. L. C. v Mattel, Inc., 552 US 576, 581 [2008].) . . .
New York policy similarly favors arbitration, viewing it as a means of "conserving the time and resources of the courts and the contracting parties." (American Intl. Specialty Lines Ins. Co. v Allied Capital Corp., 35 NY3d 64, 70 [2020], quoting Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am., 37 NY2d 91, 95 [1975].) Accordingly, " 'New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration.' " (Stark v Molod Spitz DeSantis & Stark, P.C., 9 NY3d 59, 66 [2007], quoting Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39, 49-50 [1997].)
Despite their strong policy preferences for arbitration, both federal and New York law recognize the "fundamental principle that arbitration is a matter of contract." (AT&T Mobility LLC, 563 US at 339 [internal quotation marks and citation omitted]; accord People v Coventry First LLC, 13 NY3d 108, 113 [2009] ["However, the obligation to arbitrate depends on an agreement to arbitrate; arbitration is a matter of consent, not coercion" (internal quotation marks and citation omitted)].) Thus, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (AT&T Technologies, Inc. v Communications Workers, 475 US 643, 648 [1986]; accord e.g. Inland Shoe Mfg. Co. v Pervel Indus., 81 AD2d 505, 505 [1st Dept 1981] ["It is hornbook law that no one may be compelled to arbitrate unless he has agreed to do so. This is as true under the Federal Arbitration Law . . . as it is under the law of this State"]; Matter of Brean Capital LLC v NewOak Capital LLC, 46 Misc 3d 1203[A], 2014 NY Slip Op 51838[U], *3 [Sup Ct, NY County, Dec. 22, 2014] ["(T)he applicable federal and New York law is basically the same, namely a liberal public policy in favor of arbitration, the principle that a party cannot be forced to arbitrate unless they agreed to do so by contract, and that the existence of an agreement to arbitrate is a question for a court, not the arbitrator" (citations omitted)].)
"[T]he purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so." (Ross, 547 F3d at 143 [internal [*9]quotation marks and citation omitted].) Courts must, therefore, "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." (AT&T Mobility LLC, 563 US at 339 [citations omitted].) Hence, the FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." (9 USC § 2.) "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " (AT&T Mobility LLC, 563 US at 339, quoting Doctor's Associates, Inc. v Casarotto, 517 US 681, 687 [1996].)
"The Federal Arbitration Act (9 USC §§ 1-16) specifies that a written provision to arbitrate any controversy arising out of a contract evidencing a transaction involving commerce is valid and enforceable" (Smith Barney, Harris Upham & Co., Inc. v Luckie, 85 NY2d 193, 200 [1995] [internal quotation marks omitted]). "In enacting the FAA, Congress established a Federal policy favoring arbitration agreements, which is to be advanced by rigorous judicial enforcement of arbitration agreements and by resolution of any ambiguities as to the scope of the arbitration clause itself * * * in favor of arbitration" (id. at 200-201 [internal quotation marks omitted]). "Because an agreement to arbitrate is a creature of contract, however, the ultimate question of whether the parties agreed to arbitrate is determined by state law" (Bell v Cendant Corp., 293 F3d 563, 566 [2d Cir 2002]; Irving R. Boody & Co., Inc. v Win Holdings Intern., Inc., 213 FSupp2d 378, 381 [SDNY 2002] ["state law remains dispositive on questions of contract formation"]). (See God's Battalion of Prayer Pentecostal Church, Inc., 6 NY3d at 373-374 [2006]; R.C. Metell Constr., Inc. v Sandler, 189 AD3d 1415, 1417 [2d Dept 2020]; Pankiv v Richmond Center for Rehabilitation and Specialty Healthcare, 188 AD3d 712, 713 [2d Dept 2020]). "The manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract" (Pankiv at 713 [internal quotation marks omitted]). The party seeking arbitration has the burden of demonstrating the existence of a valid agreement to arbitrate (Matter of Allstate Ins. Co. v Roseboro, 247 AD2d 379, 380 [2d Dept 1998]).
"To establish the existence of an enforceable agreement, there must be an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound" (U.S. Bank National Association v Reddy, 220 AD3d 967, 972 [2d Dept 2023] [internal quotation marks omitted]). In Petkanas v Perkanas (191 AD3d 708, 710-711 [2d Dept 2021]), the Court instructed:
" 'To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms . . . . Generally, courts look to the basic elements of the offer and acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract' " (1912 Newbridge Rd., LLC v Liantonio, 172 AD3d 962, 963-964 [2019], quoting Agosta v Fast Sys. Corp., 136 AD3d 694, 694 [2016] [internal quotation marks omitted]; see Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp., 93 NY2d 584, 589 [1999]; 26th St. Partners, LLC v Federation of Orgs. for the NY State Mentally Disabled, Inc., 182 AD3d 543, 543-544 [2020]). " 'In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds' " (Flores v Lower E. [*10]Side Serv. Ctr., Inc., 4 NY3d 363, 368 [2005], quoting Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 399 [1977]).
In Wu (78 Misc 3d at 586-587), the Court stated:
In other words, "[w]here an offeree does not have actual notice of certain contract terms, he is nevertheless bound by such terms if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." (Starke, 913 F3d at 289, citing Schnabel v Trilegiant Corp., 697 F3d 110, 120 [2d Cir 2012].)
" 'Inquiry notice' is 'actual notice of circumstances sufficient to put a prudent man upon inquiry.' " (citation omitted]) "In determining whether an offeree is on inquiry notice of contract terms, New York courts look to whether the term was obvious and whether it was called to the offeree's attention." (Starke, 913 F3d at 289, citing 22 NY Jur 2d, Contracts § 29.) It is well-settled that "[c]larity and conspicuousness of arbitration terms are important" factors for a court to consider in making the inquiry-notice determination. (citation omitted; Starke, 913 F3d at 289 ["(Inquiry notice) often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way"].)
The same contract law principles apply to online transactions. Thus, in the context of web-based contracts, the Court looks to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in a way that would put the offeree on inquiry notice of the terms (see Scotti, 63 Misc 3d at 855). Clickwrap agreements require users to click an "I agree" box after being presented with a list of terms and conditions of use (see Wu, 78 Misc 3d at 586-587).
In contrast to Wu (78 Misc 3d at 586-587), in Zambrano v Acevedo (2021 NY Slip Op. 32133 [U] [Sup Ct, NY County 2021]), the Court noted the following distinction: "Reasonable users may not understand that, by simply signing up for future ride services over the Internet, they have entered into a contractual relationship. It is qualitatively different from a large business deal where sophisticated parties hire legal counsel to review the fine print. It is also not comparable to the purchase or lease of an apartment or a car, where the size of the personal transaction provides some notice of the contractual nature of the transaction even to unsophisticated contracting parties." (See Ramos v Uber Tech., Inc., 60 Misc 3d 422, 424-425 [Sup Ct, Kings County 2018].)
In Molino v Sagamore (105 AD3d 922, 923 [2d Dept 2013]), the Court defined a contract of adhesion as containing terms that are unfair and nonnegotiable and arising from a disparity of bargaining power or oppressive tactics. This definition fits the arbitration provision in this proceeding (cf. Wu, 78 Misc 3d at 576-577, 607).
Here, Uber submits the affidavit of O'Connor, a screenshot of the in-app blocking popup screen, Uber's checkbox consent history, and the Terms of Use. While Uber contends that petitioner had actual notice of the Terms of Use, which include the arbitration agreement, because petitioner indicated that she had read the Terms of Use and agreed to them by checking the box and pressing the Confirm button on the popup screen, petitioner denies actual notice of the arbitration agreement.
With respect to inquiry notice, while Uber contends that petitioner was on inquiry notice of the arbitration agreement, because the Uber App provided clear and conspicuous notice of the [*11]Terms of Use, which included the arbitration agreement, petitioner refers to the lack of clarity and conspicuousness in that the popup screen did not explicitly explain or identify that petitioner was agreeing to an arbitration agreement, or that she was entering into a binding contract to arbitrate a motor vehicle accident, resulting in Uber's failure to secure informed consent. In the update, the popup states "We encourage you to read our updated Terms in full." This phrase does not provide adequate notice of the consequences of accepting or declining the offer that would bind petitioner to the agreement. It would have been less ambiguous if rather than the using the word "encourage", the word "must" or "should" was used.
An arbitration provision in an internet purchase agreement should not be enforced unless the Court finds that the party purportedly agreeing to an arbitration provision was aware that the right to a trial by jury was being waived. Internet contracts now make it easier than ever for corporations to bind inexperienced, unaware, and unsuspecting consumers to arbitration agreements. This is accomplished by the simple, typical, click or swipe of a finger, all from the awkward use in this context of a 3-inch by 6-inch smartphone screen, likely used by a rushed individual in need of transportation. An alternative approach might have been to email to subscribers a message regarding the terms of the arbitration provision and waiver of a jury trial. There must be a meeting of the minds determined on the basis of what a reasonable person would be led to understand under all of the surrounding circumstances. Here, petitioner has shown that there was a lack of understanding that if there was a motor vehicle accident that petitioner would not have the right to a jury trial.
Accordingly, Uber has not demonstrated that an agreement to arbitrate exists between the parties.
Waiver
In her opposition papers, petitioner argues that Uber waived its right to arbitrate by affirmatively and actively participating in the personal injury action, wherein Uber served an answer with counterclaims and discovery demands, and received responses, including authorizations and medical records, without objecting or reasserting its intent to arbitrate the matter; that Uber did not object to petitioner's notice of deposition, combined discovery demands, demand for a bill of particulars as to affirmative defenses or the request for judicial intervention and a preliminary conference; and that Uber appeared in person at the preliminary conference, agreed to a discovery schedule, procured an order to take a deposition, and opposed the Zuckerman Defendants' motion for a joint trial.
In reply, Uber argues that it has not waived its right to arbitrate; that the issue of waiver is subject to the exclusive authority of the arbitrator; and that, in any case, its conduct in the personal injury action has not been inconsistent with the assertion of its right to arbitrate. Uber asserts that it repeatedly conveyed its desire to arbitrate and has not engaged in discovery that would constitute a waiver of arbitration.
Uber explains that it simply appeared and served an answer, which did not include any counterclaims or crossclaims; that it never made a demand for any discovery from petitioner; that the discovery demands it served were specifically designated as "Limited Discovery Demands", and were only served upon the plaintiffs Antonietta Rigano, Anthony Coppola and Agatino Rigano, in the personal injury action in order to gather information in furtherance of arbitration of those plaintiffs' claims. Among other things, Uber asserts that it opposed the Zuckerman Defendants' motion for a joint trial to argue that the motion was inappropriate because it was actively pursuing arbitration on all the plaintiffs' claims.
Uber notes that it filed an order to show cause in the personal injury action to stay that action to prevent depositions from going forward pending a decision on the instant motion; and that after a hearing, this Court issued an order dated May 16, 2024, which stated that "all parties agree that Uber's participation in discovery from the date of this Order shall not be used to argue that Uber waived its right to arbitrate against any plaintiff" (the "May 16, 2024 Order"). 
"The presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like defense to arbitrability" (Diamond Waterproofing Systems, Inc. v 55 Liberty Owners Corp., 4 NY3d 247, 252 [2005] [internal quotation marks omitted]; Republic of Ecuador v Chevron Corp., 638 F3d 384, 394 [2d Cir 2011]; Bell v Cendant Corp., 293 F3d 563, 569 [2d Cir 2002]).
In P.S. Fin., LLC v Eureka Woodworks, Inc. (214 AD3d 1, 13 [2d Dept 2023]), the Court stated: "We acknowledge that '[n]ot every foray into the courthouse effects a waiver of the right to arbitrate' (Sherrill v Grayco Bldrs., 64 NY2d 261, 273 [1985]; see Cusimano v Schnurr, 26 NY3d at 400). '[W]here urgent need to preserve the status quo requires some immediate action which cannot await the appointment of arbitrators, waiver will not occur' (Sherrill v Grayco Bldrs., 64 NY2d at 273)."
Here, notwithstanding that Uber has not engaged in any substantive discovery or motion practice in the personal injury action, since Uber has not demonstrated that it has a right to arbitration, the issue of waiver need not be decided.
Conclusion
Uber has entered the realm of being a public conveyance. Under the circumstances, Uber's arguments do not convey that it was clear and unequivocal that petitioner agreed to enter an arbitration agreement with Uber. Looking at the objective manifestations of the intent of the parties, as gathered by their express words and deeds, there is no showing that there was an objective meeting of the minds, mutual assent, or intent to be bound sufficient to give rise to a binding and enforceable arbitration agreement.
Petitioner needed Uber's service, which has become ubiquitous as a common carrier. Uber's attempt to require petitioner to give up the fundamental right to a trial by jury by pressing a few clicks in an app, possibly while waiting on a street corner, is contrary to the tenets of contract law. The forfeiture of this right would merit considered reflection and possibly the advice of counsel. Uber's efforts are not merely in the nature of advising a consumer of a rate increase or penalty for a late payment but seek to impinge on a fundamental right with potentially major implications. A reasonably prudent person would not be put on notice of the importance of Uber's provision in the manner presented to petitioner.
Petitioner was deprived of making a knowing and voluntary choice as to whether to consent to arbitration and waive a jury trial by the very nature of how Uber seeks to have subscribers make that choice. It cannot be stated that the contract terms were presented to petitioner in a clear and conspicuous way. Taking a realistic and global view, petitioner should not be compelled to arbitrate where it was difficult to appreciate the consequences of waiving a fundamental right with a few clicks on an app. Uber has not shown that it was petitioner's intention to be bound by an arbitration provision in the Terms of Use.
The remaining contentions do not require a different result.
Accordingly, it is
ORDERED and ADJUDGED that respondents Uber Technologies, Inc. and Uber U.S.A., LLC's motion to dismiss the petition, to compel arbitration, and to stay the personal injury action, Coppola, et al v Uber Technologies, Inc., et al, Index No. 65453/2023, is denied; and it is [*12]further
ORDERED and ADJUDGED that the petition is granted.
The foregoing constitutes the Decision and Order of the Court.
Dated: October 2, 2024
White Plains, New York
ENTER:
HON. DAVID F. EVERETT, J.S.C.

Footnotes

Footnote 1:Uber's motion includes a screenshot of the same popup screen, but in color. The screenshot indicates that the "Terms of Use" and "Privacy Notice" hyperlinks are in blue text (Affirmation in Support, ¶ 18; NYSCEF Doc No. 9).

Footnote 2:The affidavit was submitted as Exhibit I to Uber's motion. The caption indicates that this is a copy of an affidavit that may also have been submitted in the personal injury action.

Footnote 3:Uber asserts that the previous version of the Terms of Use, the August 16, 2022, Terms of Use (the 2022 Terms), have similar language.